ANTOINE NELSON,
          **Plaintiff,**

      v.                             **Case No. 25-C-32**

KYLE TRITT, *et al.*,
          **Defendants.**

## DECISION AND ORDER

Plaintiff Antoine Nelson, who is representing himself, is proceeding on an Eighth Amendment claim in connection with allegations that Defendants used excessive force at the Waupun Correctional Institution by deploying their tasers on him at the same time for the sole purpose of causing pain on August 19, 2022. ECF Nos. 1 & 4. Defendants filed a motion for summary judgment on October 23, 2025. ECF No. 13. On December 15, 2025, Plaintiff filed a motion for leave to file a sur-reply. ECF No. 29. Because there are genuine disputes of relevant fact, I will deny Defendants' motion for summary judgment. I will also deny as unnecessary Plaintiff's motion for leave to file a sur-reply.

## I.     FACTS

At the relevant time, Plaintiff was a prisoner at the Waupun Correctional Institution, where Kyle Tritt was a Captain and Matthew Burns was a Lieutenant. ECF No. 15, ¶¶2-6. The incident giving rise to this lawsuit occurred on August 19, 2022. *Id.*, ¶10. There is no videotape evidence capturing the incident.

According to Defendants, on August 19, 2022, Lt. Burns received information through his daily investigations that Plaintiff had a cell phone in his cell in the Northwest Cell Hall. *Id.*, ¶10. A cell phone is considered "contraband" in prison and is prohibited for

multiple security reasons, including: (1) it can be used to harass victims; (2) it can be used to receive/send pornographic images; (3) it can be used to coordinate drugs/other intoxicants into the prison; and (4) it tends to create a hierarchy among prisoners where access to a cell phone can be used as an incentive to pay for favors and/or pay off debts. *Id.*, ¶33. The Northwest Cell Hall is a general population unit and inmates are allowed to move around in groups (unlike in the restrictive housing units). *Id.*, ¶11. This ability to move in groups means that the presence of a cell phone in the Northwest Cell Hall is an immediate security concern, so Lt. Burns decided to go to Plaintiff's cell (I-19) to investigate further. *Id.*, ¶¶10, 11, & 33.

As Lt. Burns walked past cell I-19, he saw Plaintiff on the top bunk with something in his hand that looked like a cell phone. *Id.*, ¶12. Lt. Burns called for Plaintiff's cell door to be opened. *Id.* When Plaintiff saw Lt. Burns, he attempted to hide the cell phone under the bed sheet; then he started to get down from the bunk and reached to grab the cell phone from under the bed sheet. *Id.*, ¶13. Lt. Burns yelled "drop it," while entering the cell. *Id.* Cpt. Tritt was in the area and heard the commotion, so he entered Plaintiff's cell behind Lt. Burns. *Id.*, ¶14. Lt. Burns and Cpt. Tritt both directed Plaintiff to drop the cell phone several times but he did not comply. *Id.*, ¶15. Instead, Plaintiff jumped down from his top bunk with the cell phone in his hand. *Id.*, ¶16. Plaintiff held his right arm up in the air and lowered his center of gravity. *Id.* Plaintiff admits, "I had a cell phone in my hand and I kept my hands visible and up in the air as ordered by Burns." ECF No. 23, ¶8.

Lt. Burns attempted to grab the cell phone, and Plaintiff pulled away. ECF No. 15, ¶16. Defendants explain that Plaintiff is taller than both of them, so they perceived him as a threat. *Id.*, ¶17. Plaintiff had also lowered his center of gravity, which can be an

2

attack posture. *Id*., ¶18. And he had a cell phone in his hand that could have been used as a weapon by either throwing it or striking the Defendants with it. *Id*., ¶19. Defendants explain that the cells in Northwest Cell Hall are very small, so there is less space to move out of the way if an inmate gets physically combative or throws an item at them. *Id*., ¶18.

Lt. Burns and Cpt. Tritt both pulled out their tasers as a last effort to show authority. *Id*., ¶¶18 & 22. At that moment, Plaintiff moved his right hand (with the cell phone) in a forward motion. *Id*., ¶22. Lt. Burns and Cpt. Tritt both perceived the motion as a threat and deployed their tasers at the same time for one standard five-second discharge cycle. *Id*., ¶¶23, 24, 35, & 36. Neither knew the other was going to deploy their taser at the very same moment—and they did not intend to activate a double voltage. *Id*., ¶¶24-28. But the events unfolded quickly and Lt. Burns and Cpt. Tritt both activated their tasers simultaneously thinking one or both of them were about to get attacked. *Id*., ¶¶20-28, & 30. After the incident, Plaintiff was on the ground, and Lt. Burns directed Plaintiff to place his hands behind his back, so he could be handcuffed. *Id*., ¶¶26 & 27. Plaintiff complied. *Id*. Lt. Burns then took Plaintiff to the nurse, who cleared Plaintiff to be placed in a cell in the Restrictive Housing Unit (RHU). *Id*., ¶32. Later, in an inmate complaint, Plaintiff admitted, "I slammed my phone on the ground to break it." *See* ECF No. 17-2 at 10.

Plaintiff has a different version of events; and his version of events differ slightly between the original complaint, his inmate complaint, and his summary judgment response materials. See ECF No. 1; ECF No. 17-2 at 10; and ECF No. 23. Plaintiff's version of events in the original complaint is consistent with Defendants' version of events that Lt. Burns and Cpt. Tritt used their tasers on him simultaneously. ECF No. 1, ¶¶21-23. He states that they tased him simultaneously "without warning…out of frustration and

3

impatience" and intended "double the voltage" to cause him pain. *Id.*, ¶¶21-23, & 27. But, according to his summary judgment response materials, the taser deployments were not simultaneous and the events unfolded in a wholly different way. ECF Nos. 21-23. According to Plaintiff, Defendants allegedly walked into his cell on August 19 with their tasers drawn. ECF No. 21, ¶29. Plaintiff jumped off of his top bunk because it did not have a ladder, *see* ECF No. 22, ¶6, and Lt. Burns and Cpt. Tritt gave him directions to "get down on my knees." ECF No. 23, ¶¶10-12. Plaintiff states that he was never directed to drop the phone down nor was he lowering his center of gravity to get into an attack position. ECF No. 21, ¶¶ 14, 15, & 18. Instead, he was attempting to comply with the order to get down on his knees, when Lt. Burns unnecessarily deployed his taser. ECF No. 23, ¶12. Plaintiff states that he fell to the ground and that is when the phone fell out of his hand. *Id.*, ¶¶ 14 & 18. In other words, Plaintiff appears to be retracting his statement from his inmate complaint alleging that he slammed his phone on the ground to break it. Plaintiff states that he "misstates the actual events in his grievance." ECF No. 21, ¶21.

Plaintiff states that, after Lt. Burns deployed the first taser shot, he was "incapacitated" and couldn't speak or yell for help. ECF No. 23, ¶14. After several minutes of being on the ground incapacitated, Cpt. Tritt then allegedly deployed his taser "for no reason whatsoever." *Id.*, ¶17. Consistent with this version of events, the Taser Activation Records show that one taser was deployed for five seconds at 14:40:26 and another was deployed for five seconds six minutes later at 14:46:12. ECF No. 17-3 at 2 & 4.

Plaintiff maintains, "[a]t no point did I resist or fail to comply with their orders." ECF No. 23, ¶19. He states that he has had to go to the Waupun Memorial Hospital numerous

4

times to see a cardiologist following the incident. *Id.*, ¶23. For a period of time, Plaintiff had to wear a heart monitor, and he still deals with irregular heart issues because of the incident. *Id.*, ¶24.

## II. DISCUSSION

**A.     Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

5

**B. Analysis**

To survive summary judgment on an Eighth Amendment excessive force claim, Plaintiff must present evidence from which a reasonable jury could conclude that Defendants applied force maliciously and sadistically to cause harm rather than in a good-faith attempt to maintain or restore discipline. *Caffey v. Maue*, 679 F. App'x 487, 491–92 (7th Cir. 2017); *see also Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020). Relevant factors include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

The parties tell different stories and there is no videotape evidence capturing the incident. According to Defendants, Plaintiff refused to comply with orders to drop his contraband cell phone, and it appeared as though he was preparing to either attack them or throw his contraband cell phone at them, so they tased him to prevent an attack. Defendants explain that they did not plan to taser him simultaneously, but events unfolded quickly, and they both used their training, judgment, and instincts in the same manner, resulting in a simultaneous taser shot. Their contemporaneous incident reports note simultaneous taser shots based on their perception that he was a threat to their safety. ECF No. 16-1 and ECF No. 17-1. According to Plaintiff, he was never directed to drop the contraband cell phone and he was attempting to comply with orders to drop to his knees, when Lt. Burns unnecessarily tased him. Six minutes later, after Plaintiff was

6

already on the ground and incapacitated, Cpt. Tritt then allegedly tased him a second time out of anger and frustration.  Although Plaintiff's story shifts a bit between his original complaint, inmate complaint, and summary judgment response materials, the Taser Activation Records appear to be consistent with Plaintiff's assertion that the second taser shot happened six minutes later and was therefore wholly unnecessary.  While it is possible that Plaintiff has changed his story at summary judgment to match the evidence available, that is a credibility determination for the jury.  Additionally, Defendants claim that the six-minute discrepancy in the Taser Activation Records is "clock drift" were "it is not uncommon for a time to be off on an X-26P Taser" by several minutes.  ECF No. 26 at 3.  But at this point in the litigation, I must draw all reasonable inferences in favor of Plaintiff.  It is possible that "clock drift" explains the discrepancy.  But it is also possible that Cpt. Tritt did in fact tase him six minutes later, as Plaintiff now claims.  That too is a question for the jury.  Based on the evidence presented by Plaintiff, including his own testimony and the Taser Activation Records, a reasonable jury could find in his favor.

Defendants also raise the defense of qualified immunity.  ECF No. 14.  But Seventh Circuit law is clear that, when a genuine dispute of material fact exists, qualified immunity cannot be resolved at summary judgment.  *Smith v. Finkley*, 10 F.4th 725, 735 (7th Cir. 2021).  Here, there is a genuine dispute of material fact regarding the timing of the second taser shot.  If a jury believes Plaintiff's version of events, and the second taser shot occurred six minutes after the first taser shot when Plaintiff was already incapacitated on the ground, Defendants would not be entitled to qualified immunity for the gratuitous and wholly unnecessary deployment of the second taser shot.  *See e.g. Abbott v. Sangamon Cnty., Ill.,* 705 F.3d 706, 732 (7th Cir. 2013) (holding that it was clearly established as of

June 2007 that deployment of a second taser shot on an individual who was non-moving after the first taser shot was unlawful). Therefore, I will deny Defendants' motion for summary judgment.

### III. CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (ECF No. 13) is **DENIED**. The Court will schedule a telephone status conference to discuss next steps.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply (ECF No. 29) is **DENIED** as unnecessary.

Dated at Milwaukee, Wisconsin this 21st day of April, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

8